GONZALEZ, Appellant,

v.

HENCEROTH ENTERPRISES, INC. et al., Appellees.

[Cite as *Gonzalez v. Henceroth Enterprises, Inc.* (1999), 135 Ohio App.3d 646.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 98CA007043.

Decided Dec. 15, 1999.

*Michael P. Maloney,* for appellant.

*Thomas Coughlin, Jr.,* for appellee Henceroth Construction Company.

*Terrence J. Kenneally,* for appellee Hull Builder's Supply.

WHITMORE, Judge.

Plaintiff Christine Gonzalez has appealed from a jury verdict in favor of defendants Henceroth Construction Company and Hull Builder's Supply. This court affirms.

## I

Sometime before 8:00 a.m., on the morning of October 25, 1993, Hull Builder's Supply ("Hull") deposited a load of limestone gravel in the street at 4952 Timberview Road, Vermilion, Ohio. The deposit was made at the request of Henceroth Construction Company ("Henceroth") which had an ongoing construction project at that address. The heap was approximately three feet high and twelve feet long. It blocked almost the entire westbound lane of traffic.

At 8:12 a.m., an off-duty police officer, Lieutenant Don Newbill, walked to his mailbox on the curb. Standing at his mailbox, three hundred feet from the pile, he observed the gravel without a problem. Lt. Newbill then observed a red Ford Topaz driven by plaintiff travel past him and collide with the gravel moments later.

On June 12, 1995, plaintiff filed a negligence action against Henceroth and Hull in the Lorain County Court of Common Pleas. In her complaint, she alleged that she had sustained injuries as a result of the gravel placed in the road by Henceroth and Hull. During January 1998, the case was tried to a jury, which returned a general verdict in favor of Henceroth and Hull. Plaintiff has timely appealed, asserting two assignments of error.

## II

### Assignment of Error One

"The trial court erred in failing to instruct the jury on negligence per se where [Henceroth and Hull] violated a municipal ordinance which imposed a specific duty for the protection of others."

Plaintiff argues that the trial court erred in not instructing the jury that the alleged violation of Vermilion Codified Ordinances 1020.03(b) and 1020.06 by Henceroth and Hull constituted negligence *per se*. However, plaintiff failed to raise this argument at the trial court prior to the jury's retirement for deliberations. Civ.R. 51(A) provides:

"On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."

■■ Generally, failure to comply with Civ.R. 51(A) results in a waiver of the alleged error on appeal. *State v. Peagler* (1996), 76 Ohio St.3d 496, 499, 668 N.E.2d 489, 492–493; *Sindel v. Toledo Edison Co.* (1993), 87 Ohio App.3d 525, 530, 622 N.E.2d 706, 709–710, citing *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001, paragraph one of the syllabus. Under

such circumstances, however, the plain error rule finds application. *O'Brien v. Stern* (Sept. 4, 1985), Summit App. 12001, unreported, at 4, 1985 WL 10836. The plain error rule is a judicially created exception to Civ.R. 51(A) that allows review of alleged errors not properly objected to in the trial court, where the errors are so fundamental and serious so as to affect "the basic fairness, integrity, or public reputation of the judicial process." *Yungwirth v. McAvoy* (1972), 32 Ohio St.2d 285, 288, 61 O.O.2d 504, 506, 291 N.E.2d 739, 742. Thus, this court must examine the jury instructions to determine whether they were erroneous under the plain error rule. In its charge, the trial court stated:

"A person may require [*sic*], may be required by law to do something or not to do something. Failure to do what is required by law is negligence, as is doing something which the law prohibits.

"The City of Vermilion has two ordinances which provide as follows:

"Section 1020.03, Section B states that 'No person shall place or drop upon any street any mud, dirt, ashes, cinders or other materials unless directed to do so by proper authorities.'

"Section 1020.06 states that 'No person shall leave unprotected or unguarded or without proper lighting any hole, excavation, pile of dirt or other material on any street.'

"In deciding whether ordinary care was used, you will consider whether either party should have foreseen under the circumstances that the natural and probable result of an act or failure to act would cause some injury."

It is well established that where a legislative body enacts a law that commands or prohibits a specific act for the safety of others and it is violated by one whose duty it is to obey it, the violation constitutes negligence *per se*. *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph three of the syllabus; see, also, *Steele v. McNatt* (1995), 102 Ohio App.3d 558, 563, 657 N.E.2d 575, 577–578. However, if the legislative enactment expresses a rule of conduct in general or abstract terms, the doctrine of negligence *per se* has no application, and liability turns on whether the defendant exercised the care of a reasonably prudent person under similar circumstances. *Eisenhuth*, at paragraph three of the syllabus; *Steele*, 102 Ohio App.3d at 563, 657 N.E.2d at 577–578. In short, for a plaintiff to claim negligence *per se*, he or she must present evidence that (1) there is a legislative enactment that imposes a *specific* duty upon the defendant for the safety and protection of a person in plaintiff's position, (2) the defendant failed to observe the enactment, and (3) that failure proximately caused his or her injury. See *Gressman v. McClain* (1988), 40 Ohio St.3d 359, 362, 533 N.E.2d 732, 735–736; see, also, *Prince v. Jordan*

(Sept. 30, 1998), Lorain App. 97CA006906, unreported, at 12, 1998 WL 668254.

█ In this case, plaintiff asserts that both Henceroth and Hull violated two Vermilion Codified Ordinances. Vermilion Codified Ordinance 1020.03(b) provides:

"No person shall place or drop upon any street, alley or public thoroughfare in the City any mud, dirt, ashes, cinders or other materials unless directed to do so by the proper authorities."

From the plain language of this ordinance, it appears to this court that the ordinance is intended to prevent anyone from blocking any public street, thus preventing the public use thereof. See *Wilson v. Ashtabula Water Works* (1961), 93 Ohio Law Abs. 55, 57, 28 O.O.2d 475, 476, 196 N.E.2d 344, 345. In *Wilson*, the court of appeals concluded that R.C. 5589.01, which provides, "No person shall obstruct or encumber by fences, buildings, structures, or otherwise, a public ground, highway, street, or alley of a municipal corporation," was intended to prevent the obstruction of traffic and was not a safety statute. See *Wilson*, 93 Ohio Law Abs. at 57, 28 O.O.2d at 476, 196 N.E.2d at 345. Likewise, Vermilion Codified Ordinance 1020.03(b) is neither a measure in the furtherance of public safety nor meant to protect an individual in plaintiff's position. Thus, a violation of Vermilion Codified Ordinance 1020.03(b) would not constitute negligence *per se*.

While reaching the same result, the analysis for the second ordinance requires a deeper examination. In *Becker v. Shaull* (1992), 62 Ohio St.3d 480, 483, 584 N.E.2d 684, 686–687, the Ohio Supreme Court held that R.C. 5589.06, which provides that " '[n]o person shall wrongfully obstruct any ditch, drain, or watercourse along, upon, or across a public highway,' " was a statute setting forth a general duty, rather than a specific one. Its inquiry, however, went further than the court in *Wilson*. The *Becker* court determined that answers to two issues were required by the statute: (1) Was the ditch obstructed, and (2) if so, was the obstruction wrongfully caused? The court went on to conclude that if two issues are raised by a statute and the duty set forth is not fixed and absolute, the statute is a general-duty statute and the question raised is one of due care, not negligence *per se*. *Becker*, 62 Ohio St.3d at 483–484, 584 N.E.2d 684, 686–687; see, also, *Ogle v. Kelly* (1993), 90 Ohio App.3d 392, 397–398, 629 N.E.2d 495, 498–499.

█ This court now turns to the second city ordinance at issue in this case. Vermilion Codified Ordinance 1020.06 provides:

"No person shall leave unprotected or unguarded or without proper lighting any hole, excavation, pile of dirt, trucks, equipment or other material in any of the streets."

Like the statutory language in *Becker*, the plain language of this ordinance requires answers to two separate questions of fact: (1) Was there material in the street, and (2) if so, was it unprotected, unguarded, or not properly lit? In order to find that Henceroth and Hull were negligent in leaving the gravel in the westbound lane, the jury must determine not only that they indeed placed the gravel in the street, but also that the gravel was unguarded, unprotected, or not properly lit. Not only are the terms of Vermilion Codified Ordinance 1020.06 general, its requirements are ambiguous. The second question to be answered requires a subjective determination of what lighting might be proper, and will inevitably be answered differently each time a new set of facts presents itself. It fails to impose a fixed and absolute duty that is the same under all circumstances. As such, Vermilion Codified Ordinance 1020.06 is a general-duty ordinance, and its violation would not constitute negligence *per se.*

Having determined the two applicable ordinances are not specific-duty ordinances and do not require a negligence *per se* analysis, this court concludes that the trial court's jury instructions did not rise to the level of plain error. The issue of whether Henceroth and Hull exercised ordinary care was properly before the jury. Accordingly, plaintiff's first assignment of error is overruled.

### Assignment of Error Two

"The jury's verdict was against the manifest weight of the evidence."

Plaintiff argues that the evidence admitted at trial validates her claim of negligence and that the jury verdict was therefore against the manifest weight of the evidence. She asserts that because the gravel blocked the westbound lane of Timberview Road, Henceroth and Hull were both negligent *per se.* She insists that because (1) neither Henceroth nor Hull denies dumping of the gravel in the road and (2) several municipal ordinances proscribe such activity, their dumping the gravel must have constituted negligence.

When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. *Frederick v. Born* (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14, 1996 WL 471219. In determining whether a criminal conviction is against the manifest weight of the evidence:

" 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs

heavily against the conviction.' " *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721; see, also, *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010–1011.

Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.

In response to plaintiff's assertions, Henceroth argues that plaintiff in effect waived her second assignment of error by failing to move for a new trial pursuant to Civ.R. 59(A)(6). Henceroth asserts that a trial court is denied an opportunity to review the errors presented on appeal without a motion for new trial on the grounds that the verdict was against the manifest weight of the evidence. It asks this court to find that plaintiff's failure to file a motion for new trial within the fourteen days allowed for a Civ.R. 59(A) motion constitutes waiver of her right to raise the same issue for the first time on appeal. This court declines that invitation for several reasons.

 The Ohio Rules of Civil Procedure and the Ohio Appellate Rules of Procedure do not require a party to move for a new trial in order to preserve an argument. If this court were to so hold, it would be tantamount to requiring a motion for a new trial prior to any civil appeal. See Civ.R. 59(A)(9). Moreover, it would in effect reduce the thirty-day window for appeal to fourteen days. Accordingly, this court refuses to hold that a Civ.R. 59(A)(6) motion is required at the trial court in order to argue at the appellate level that the verdict was against the manifest weight of the evidence.

 In the alternative, Henceroth and Hull argue that the ordinances in question did not require a negligence *per se* inquiry. This court agrees, and as noted above, the proper question before the jury was whether Henceroth and Hull failed to exercise ordinary care in their placement of the gravel at 4952 Timberview Road. Henceroth and Hull further assert that the jury's verdict was not against the manifest weight of the evidence. They argue that because (1) an off-duty police officer testified that the pile of limestone was clearly visible from three hundred feet away, (2) there were no adverse weather conditions, (3) it was daylight at the time of the accident, and (4) the plaintiff admitted seeing a construction sign, the jury could have easily concluded that the defendants, Henceroth and Hull, had exercised ordinary care.

After reviewing the entire record and in light of the evidence presented at trial, this court holds that the jury did not clearly lose its way or create a manifest miscarriage of justice. An off-duty police officer testified that the pile of

limestone was clearly visible from three hundred feet away; there were no adverse weather conditions at the time of the accident; it was daylight; and the plaintiff admitted seeing a construction sign before the accident. A reasonable jury could have concluded that Henceroth and Hull had exercised ordinary care. This court concludes that the jury's verdict was not against the manifest weight of the evidence. Therefore, plaintiff's second assignment of error is overruled.

## III

Plaintiff's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

*Judgment affirmed.*

CARR, P.J., and BATCHELDER, J., concur.